**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOSE LUIS MONTANEZ**, | |
| **Plaintiff,** | |
| -against- | **23-CV-00370 (ALC)** |
| **COMMISSIONER OF SOCIAL SECURITY,** | <u>**OPINION & ORDER**</u> |
| **Defendant.** | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Jose Luis Montanez ("Plaintiff") brings this action challenging the

Commissioner of Social Security's ("Defendant") final decision that Plaintiff is not disabled

under § 1614(a)(3)(A) of the Social Security Act and thus does not qualify for supplemental

security income. The Court now considers the parties cross-motions for judgment on the

pleadings pursuant to *Fed. R. Civ. P. 12(c)*. Upon review of the parties' submissions and for the

reasons herein stated, Plaintiff's motion is **DENIED**, and Defendant's cross-motion is

**GRANTED.**

**BACKGROUND**

**I.      Procedural Background**

On February 3, 2021, Plaintiff filed an application for supplemental social security income,

which was denied on April 23, 2021, and upon reconsideration denied again on June 30, 2021. R.

at 10.[1] Following the denials, Plaintiff filed a request for a hearing on July 27, 2021. *Id.* The

hearing was held virtually on December 16, 2021. Plaintiff was represented during the hearing

and the evidence was submitted properly. *Id.* On February 1, 2022, Defendant transmitted his

---

[1] "R." refers to the Certified Administrative Record prepared by the Social Security Administration. ECF No. 6.
Pagination follows original pagination in the Certified Administrative Record.

decision to Plaintiff, informing Plaintiff that the application for supplemental security income had been denied, in accordance with Defendant's finding that Plaintiff had "not been under a disability, as defined in the Social Security Act, since February 3, 2021, when the application was filed (20 CFR 416.920(c))." R. at 16. Following the rendering of the February 1st decision, Plaintiff then filed a request for review on February 23, 2022, arguing that while his dwarfism was not a disability, it did "ha[ve] significant vocational implications." R. at 164. On November 14, 2022, the Appeals Council affirmed the February 1, 2022, decision of Defendant, stating that under the Appeals Council rules there was no reasons provided by Plaintiff that warranted a review of the Administrative Law Judge's ("ALJ") decision. Plaintiff then commenced the action at hand.

## II.    Factual Background

Plaintiff was born on February 7, 1989, and was 31 years old at the time his claim was filed. R. at 25. At the time of the hearing, Plaintiff was residing with his mother. R. at 36. Plaintiff obtained a high school diploma. R. at 29. Between 2016 and 2017, Plaintiff held seasonal indoor and outdoor custodial jobs, but testified that he had ceased working due to physical inability to do the required labor. R. at 30-32. Plaintiff has dwarfism, standing between 4'2" – 4'3" and weighing approximately 120lbs. R. at 30. Additionally, Plaintiff has sciatica on his legs; he has been told this is a sign of oncoming arthritis. *Id.* Plaintiff also stated that he suffers from mental health issues, testifying he has depression and bipolar disorder. R. at 32.

*Non-Medical Evidence*

### i.    Summary of Plaintiff's Testimony

Plaintiff provided testimony for the ALJ on December 16, 2021. R. at 25. During his testimony, Plaintiff stated that he was a little person, suffered from back problems, and was presenting the signs of emerging sciatica on his legs. R. at 28. Plaintiff stated that throughout his high school education, he believed he had learning disabilities due to his placement in special education classes and receiving what he referred to as an "IEP diploma." R. at 29. When discussing employment history, Plaintiff testified that he had been doing seasonal custodial work between 2016 and 2017 but had been unable to perform the duties required of the job. R. at 30. When asked why he had been unable to perform the custodial work, Plaintiff stated that he had been instructed by his doctors not to carry heavy things due to back pain, and that he required assistance doing the routine work of the job, such as moving garbage into trash cans and mopping floors. R. at 31. Plaintiff stated that he believes he can lift approximately five pounds at maximum, and that he can only stand "for like a good minute or two" before his legs begin to experience numbness. R. at 32. Plaintiff stated he believes that he has been passed over for employment opportunities due to his physical stature, which he states may have exacerbated his mental health ailments. R. at 34.

Plaintiff detailed his mental health challenges on the record, stating that he experiences "depression, bipolar disorder, [] bipolar depression." R. at 32. He also stated that due to these ailments, he had been experiencing bouts of anger. R. at 32-33. Symptoms stemming from his mental health issues include crying, trouble sleeping, and anxiety attacks. R. at 33. During his testimony, Plaintiff informed the ALJ that he had been prescribed medication for his depression and anxiety and had been receiving talk therapy. R. at 35.

ii.    **Summary of Administrative Law Judge's Findings**

The ALJ found that Plaintiff did not have an impairment that "significantly limited . . . the ability to perform work-related activities for 12 consecutive months" and "therefore, the [Plaintiff] d[id] not have a severe impairment or combination of impairments." R. at 12. The ALJ acknowledged that Plaintiff's "medically determinable impairments" could in fact cause the symptoms he had reported throughout his testimony. R. at 13. However, the ALJ cast doubt on the severity of the symptoms, citing to inconsistencies throughout the record between Plaintiff's description of the severity and courses of treatment and the descriptions articulated in the medical records he provided. *Id.* The ALJ pointed to the fact Plaintiff had only sought treatment twice, with neither examination indicating "significant clinical signs," as a factor in his decision to find the impairments non-severe. *Id.* The ALJ considered the diagnoses made by Dr. Goldstein, a consultative psychological examiner. R. at 14. Goldstein diagnosed Plaintiff with both bipolar and major depressive disorders – mild, which the ALJ noted in his findings. R. at 14. However, while acknowledging Dr. Goldstein's diagnoses, the ALJ pointed to Goldstein's finding that Plaintiff had "no mental limitations and that his impairment would not significantly interfere with his daily functioning" as a factor into his decision. *Id.*

In addition to Dr. Goldstein's conclusions, the ALJ acknowledged the comprehensive Montefiore records, particularly the August 2021 notes. R. at 14. While Montefiore referenced many of the physical ailments Plaintiff testified to, the ALJ emphasized that Plaintiff "had full range of motion and no tenderness in his legs or joints and his mood, affect, attention, and concentration were described as normal." *Id.* The ALJ ultimately deemed Plaintiff's mental and physical impairments to be mild and that they were no more than a minimal limitation on

Plaintiff's ability to do basic work activities. R. at 16. The ALJ ultimately concluded that Plaintiff was not under a disability, as defined under the Social Security Act. *Id.*

### ii.     Disability Report

In a disability report filed on February 9, 2021, Plaintiff listed the following under medical conditions: bipolar disorder, anger issues, depression, arthritis in left leg, that he was a little person. R. at 186. The report stated that Plaintiff was not currently suffering pain or other symptoms as a result of his conditions. *Id.* The report stated that Plaintiff had been terminated from his employment, but that his condition had not caused changes in his work activity. *Id.* At time the report was filed, Plaintiff reported he was not taking any prescription or non-prescription medication. R. at 188.

*Medical Evidence*

### i.     Montefiore

Plaintiff's medical records from Montefiore indicate that he was examined over the course of several visits in the summer and fall of 2021. R. at 254 *et seq.* The records state that Plaintiff's primary impetus for seeking help were anxiety, depression, and trauma. R. at 265. The records note that Plaintiff reported experiencing depression since 2017. R. at 266. Expanding upon these concerns, Plaintiff reported that he had previously attempted suicide, and he discussed a history of childhood emotional abuse and trauma from his stepfather and mother. *Id.*

Subsequent examinations found Plaintiff to be of a short build, with a normal gait. R. at 268. Plaintiff's musculoskeletal system was found to have a "full range of motion, no edema, [and] no tenderness [in the legs or joints]." R. at 285. Mentally, the exam revealed Plaintiff possessed "good judgment," and that he was not experiencing hallucinations or delusions. R. at 268-269. At

the time of the examination on September 24, 2021, Plaintiff was not found to be suicidal, nor was he labelled with a risk factor. R. at 269-270. Ultimately, the attending physician at Montefiore prescribed 5-10 milligrams of escitalopram and instructed Plaintiff to take melatonin as necessary to induce sleep. R. at 270. Plaintiff was scheduled for follow-up visits but did not attend them, with both the Plaintiff and Montefiore attempting to reschedule at various times. R. at 256-59. Despite Plaintiff attempting to reschedule additional visits following his missed appointment, it is unclear from the record if he ever received subsequent evaluation or treatment from Montefiore.

ii. **Dr. Goldstein**

On March 11, 2021, Dr. Joshua Goldstein issued a report diagnosing and assessing Plaintiff's mental health ailments. The report notes that Plaintiff informed Dr. Goldstein that he had sought mental health treatment as early as 2005, but this is not documented in other medical records submitted to the ALJ, nor was it mentioned during his testimony. R. at 235. The report notes Plaintiff suffered from chronic back pain. *Id.* The report details Plaintiff's chief complaints which included anxiety, a depressive mood, panic attacks, mood swings and auditory hallucinations. *Id.* Plaintiff informed Dr. Goldstein of his attempted suicide attempt in 2018 but denied further attempts. *Id.* Dr. Goldstein found Plaintiff to be cooperative, possessing a neutral mood, in addition to fair judgment and insight. R. at 236-237. In his report, Dr. Goldstein diagnosed Plaintiff with an unspecified bipolar and related disorder and a mild major depressive disorder. R. at 238. Dr. Goldstein expanded on the effects of these diagnoses, stating that Plaintiff would be able to adequately interact with superiors and coworkers, sustain ordinary routines and tasks, keep regular work attendance, regulate emotions and behavior. R. at 237-38. Dr. Goldstein found no evidence that Plaintiff would be limited in understanding, remembering, or applying

simple or complex sets of directions and instructions. R. at 237. He also found that Plaintiff was able to perform ordinary adult functions and tasks, such as bathing himself, dressing himself, grooming himself and being capable of managing his own finances. R. at 237. Dr. Goldstein stated that Plaintiff's ailments "[do] not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." R. at 238.

### iii.    Dr. Xie

Dr. Laiping Xie issued a report assessing Plaintiff's condition, noting Plaintiff's chief complaints were his longstanding back pain, intermittent right leg pain and his depression. R. at 241. Xie noted Plaintiff's back pain was often exacerbated by heavy exertion. R. at 241. The report also notes Plaintiff's reported past leg pain, but states the pain is only present "sometimes" and with distance walking. *Id.* Xie stated that Plaintiff was in "no acute distress," had a normal gait, a full rotary movement.  R. at 242. The report also noted Plaintiff had no issues with his extremities. R. at 243. Xie diagnosed Plaintiff with intermittent low back pain, left leg pain, depression, and bipolar disorder, and found his prognosis to be fair. *Id.* Deferring any psychological conclusions to the psychologist, Xie concluded his physiological report by determining that Plaintiff had mild limitations with prolonged activities, such as standing, walking, climbing stars, or bending. *Id.*

## LEGAL STANDARDS

### I.    Standard of Review

A district court will review a Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether substantial evidence supporting the Commissioner's decision is present and whether the Commissioner applied the correct legal standard. *Talavera v. Astrue*, 697 F. 3d 145, 151 (2d. Cir. 2012). The Supreme Court has stated that a finding of fact will be

conclusive "if supported by evidence." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). This evidence must be "substantial evidence," which is "more than mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Thus adhering to the substantial evidence standard, a district court can only reject facts found by an ALJ "if a reasonable factfinder would conclude otherwise." *Brault v. Soc. Sec. Admin.*, 638 F. 3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F. 3d 1287, 1290 (8th Cir. 1994)).  Approaching this case, the court must provide considerable deference to the Commissioner's determination, without "substitute[ing] its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon de novo review." *Zapata v. Comm'r f Soc. Sec.*, No. 22-cv-05544 (ALC), 2024 U.S. Dist. LEXIS 47878*; 2024 WL 1115671, 18* (S.D.N.Y. Mar. 12, 2024) (quoting *Jones v. Sullivan*, 949 F. 2d, 57 59 (2d. Cir. 1991)).


## II.       Determining Disability

The Social Security Act defines a disability as one that "renders a person unable to 'engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Zapata v. Comm'r of Soc. Sec.*, No. 22-cv-05544 (ALC) 2024 U.S. Dist. LEXIS 47878, 2024 WL 1115671 (S.D.N.Y. Mar. 12, 2024) (quoting 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A)). The impairment in question, must be one "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work, which exists in the national economy." *Shaw v. Chater*, 221 F. 3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

### III.    Commissioner's Five-Step Analysis of Disability Claims ("The Analysis")

When determining whether a disability conforms with the prescribed definition established by the Social Security Act, the Commissioner employs a five-step process. 20 C.F.R. § 404.1520(a)(4). The process is as follows:

1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2) If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

3) If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him *per se* disabled.

4) Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

5) Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013). An analysis at step two requires the ALJ to determine whether a plaintiff had a medical determinable impairment and that such impairment was severe, or a combination of several impairments resulted in severity. *See Mojica v. Comm'r*

*of Soc. Sec.*, No. 13 Civ. 5631 (KPF) 2014 U.S. Dist. LEXIS 160926, 2014 WL 6480684, *26 (S.D.N.Y. Nov. 17, 2014) (*quoting* 20 C.F.R. § 416.9209(c)). An impairment qualifies as severe when it "significantly limits [one's] physical or mental ability to do basic work activities." *Id.*

## DISCUSSION

Plaintiff argues that (1) the ALJ's decision was not supported by substantial evidence because it failed to properly evaluate and develop the medical record. Plaintiff also argues that (2) the ALJ did not properly balance the subjective statements made by Plaintiff and the medical records. As elaborated below, the Court concludes that the ALJ did properly develop the medical record, that the ALJ did render a decision supported by substantial evidence, and that the ALJ's decision was reached after properly balancing the subjective statements and the medical records presented before him.

I.    **The ALJ's Decision is Supported by Substantial Evidence and the ALJ Properly Evaluated and Developed the Record**

Plaintiff asserts that the ALJ erred by not finding a severe impairment in step two of the analysis. Plaintiff contends that the ALJ, by failing to develop the record, was not able to properly determine that Plaintiff's mental impairments were in severe. Plaintiff also contends that the ALJ was unable to determine whether his physical impairments were severe without a developed record.

When adjudicating a Social Security hearing, an ALJ has a duty to "investigate both the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). To do so, the ALJ "must make 'every reasonable effort' to obtain from an individual's treating healthcare provider all medical evidence necessary to properly make a disability determination. *Jackson v. Kijakazi*, 588 F. Supp. 3d 558,

583 (S.D.N.Y 2022) (citing *Starr v. Comm'r of Soc. Sec.*, No. 20-cv-4484 (GWG), 2022 U.S. Dist. LEXIS 13759, 2022 WL 220408, at *5 (S.D.N.Y., Jan. 26, 2022)). A reasonable effort begins with an initial request from the medical source; if the initial request has not been fulfilled, 10-20 days after issued, the ALJ must issue a follow-up request within the 10–20-day calendar window. *Pomales v. Acting Comm'r of Soc. Sec.*, No. 22 Civ. 6009 (AEK) 2023 U.S. Dist. LEXIS 171429, 2023 WL 6240627, at *16, *17 (S.D.N.Y. Sept. 26, 2023) (citing 20 C.F.R. §§ 404.1512(b)(1)(i)). An ALJ has a heightened duty to develop the record when a claimant has a mental impairment. *Pomales v. Acting Comm'r of Soc. Sec.*, No. 22 Civ. 6009 (AEK) 2023 U.S. Dist. LEXIS 171429, 2023 WL 6240627, at *14, *15 (S.D.N.Y. Sept. 26, 2023) (quoting *Angelica P. v. Comm'r of Soc. Sec.*, No. 21-cv-9529 (GRJ), 2023 US. Dist. LEXIS 37177, 2023 WL 2366913, at *4 (S.D.N.Y. Mar. 6, 2023)).

Plaintiff specifically alleges that the ALJ had failed to obtain medical records from Montefiore concerning visits from September 2021 and beyond. Additionally, Plaintiff alleges the record was not further developed because it did not include a long-term review of Plaintiff's mental health challenges. Plaintiff argues that instead of relying on consultative physicians whom Plaintiff alleges were working with irrelevant and antiquated scans and records, the ALJ was required to independently  obtain opinions from specialized doctors regarding Plaintiff's back pains..

Because Plaintiff has not demonstrated that the ALJ failed to properly develop the record, his arguments are without merit. Plaintiff claims that the ALJ made no attempts to receive the post September 2021 medical records, but this assertion is inconsistent with the transcripts of the December 2021 hearing. In fact, at the commencement of the testimonial hearing, the ALJ had received no medical records of any kind from Plaintiff. R. at 27. Plaintiff was questioned on the

11

record as to how many medical facilities had been or were currently treating him with relevant records and was subsequently given time to submit the medical records to the ALJ for consideration. R. at 27-28. The records that were subsequently provided from Montefiore spanned 73 pages and concerned a variety of areas from Plaintiff's mental health to his physical health, contained the opinions of various medical professionals, and were the only medical records he indicated he possessed and ultimately submitted to the ALJ. *See* R. 254-327. The ALJ explicitly stated on the record that he would reserve judgment until receiving and reviewing the records, and that he would only render a judgment if the records and the testimony combined did not require supplementation. R. at 39. Plaintiff was given an opportunity to provide the ALJ with any and all medical records he had, from various different providers if they were available and he provided only records from Montefiore. The ALJ was under no obligation to develop the record any further, as he allowed Plaintiff additional time to submit his medical records. The ALJ also did not express concern that the record was lacking in any way that would prohibit him from ruling. *See Moody v. Comm'r of Soc. Sec.*, 848 F. Appx. 470, 471, (2d. Cir. 2021) (finding the ALJ had adequately developed the record by allowing Plaintiff additional time to supplement the record with outstanding documents and that the ALJ had properly considered the opinions of all documented physicians).

Plaintiff also asserts that the ALJ should have sought medical opinions from "treating physicians," who ostensibly would conduct novel imaging of Plaintiff's back. Plaintiff argues that by failing to seek new opinions, the ALJ failed to properly develop the record. This argument is unconvincing; Plaintiff never asserted during the proceedings that the records provided to the ALJ from Montefiore were not encompassing, nor did he ever attempt to claim that the evidence being provided was irrelevant to the impairments he was alleging. Thus, the

ALJ did not err in failing to further develop the record by simply accepting the records as given by Plaintiff, especially after Plaintiff had been given additional time to provide the records and was asked during the hearing whether any additional records could be provided to the ALJ. Plaintiff's failure to do so does not equate to the ALJ failing to develop the record. *See Curley v. Comm'r of Soc. Sec.*, 808 F. Appx. 41, 44 (2d. Cir. 2020) (ruling that the ALJ did not fail to develop the record by not seeking records from an additional medical provider of Plaintiff. The ALJ asked if additional records were missing, and neither Plaintiff nor counsel provided any additional records).

Plaintiff claims his mental impairments could have been properly classified as a major depressive disorder and a *per se* severe impairment through a developed record. When an ALJ excludes a condition or symptom during the step two analysis, it will constitute harmless error so long as the ALJ addressed or identified other severe impairments and concludes that the omitted conditions or symptoms do not significantly limit the plaintiff's ability to perform basic work. *De Cachamo v. O'Malley*, No. 22-cv -7779 (RWL) 2024 US. Dist. LEXIS 28605, *37 (S.D.N.Y. Feb. 20, 2024) (*quoting Rodriguez v. Saul*, No. 19-cv-9066, 2021 U.S. Dist. LEXIS 35435, 2021 WL 738348, *12 (S.D.N.Y. Feb. 25, 2021)). However, even if an ALJ determines an impairment to be non-severe, the ALJ still must consider the cumulative impact of a claimant's medically determinable impairments during a step two analysis.  *Rodriguez v. Saul*, No. 19-cv-9066, 2021 U.S. Dist. LEXIS 35435, 2021 WL 738348, *38 (S.D.N.Y. Feb. 25, 2021) (*quoting Boudreau o/b/o Boudreau v. Comm'r*, No. 18-cv-6681, 2020 U.S. Dist. LEXIS 5509, 2020 WL 1501752, *4 (W.D.N.Y. Mar. 30, 2020)). In *Rodriguez,* the court ultimately found that the ALJ's error was not harmless because the ALJ had failed to discuss the plaintiff's left ankle throughout any stage of the analysis. *Rodriguez v. Saul*, No. 19-cv-9066, 2021 U.S. Dist. LEXIS 35435, 2021 WL

738348, *38 (S.D.N.Y. Feb. 25, 2021). Here, the ALJ explicitly addressed Plaintiff's mental health impairments several times within the decision, specifically citing Plaintiff's depressive and anxiety disorders in the step two findings. R. at 12. The ALJ further addressed Plaintiff's mental health impairments later in the decision by including Dr. Goldstein's findings, which stated that the Plaintiff suffered from bipolar and mild major depressive disorder but was otherwise not significantly limited in his daily functioning. R. at 14. These circumstances are most akin to the facts of *De Camacho*, where the court held that the ALJ's finding that a major depressive disorder was not severe, was at worst harmless error. *De Cachamo v. O'Malley*, No. 22-cv -7779 (RWL) 2024 US. Dist. LEXIS 28605, *37 (S.D.N.Y. Feb. 20, 2024). The court arrived at its conclusion because the ALJ had supported its non-severe finding through citation to the plaintiff's medical records which concluded that the plaintiff's depressive disorder did not inhibit the plaintiff's work performance. *Id.* at *37-38. Here, because the ALJ similarly based its non-severe finding off medical reports that unanimously found that the Plaintiff was not inhibited in being able to function daily and in the performance of his work, any error made in labelling the Plaintiff's mental health impairments as non-severe would be considered harmless.

Plaintiff similarly argues that the consulting physicians who opined that Plaintiff's physical ailments were non-severe, nor limiting, had failed to review the medical records from Montefiore. Pl. Mem. at 7-8. Again, this argument is unconvincing. The standard to qualify for disability requires a showing "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Mojica v. Comm'r of Soc. Sec.*, No. 13 Civ. 5631 (KPF) 2014 U.S. Dist. LEXIS 160926 *23 (S.D.N.Y. Nov. 17, 2014) (*citing* 42 U.S.C. § 423(d)(2)(A)). Throughout the ALJ's findings, the ALJ cited directly to

the conclusions in the Montefiore records which explicitly stated that Plaintiff possessed mental soundness and physically possessed a full range of motion and no tenderness in his legs or joints. R. at 14.

Because the record was adequately developed, and the conclusions reached by the ALJ were supported by sufficient evidence, the Court supports the ALJ's findings.

II.    **The ALJ Properly Evaluated Plaintiff's Subjective Statements**

Plaintiff claims that the ALJ did not properly weigh Plaintiff's subjective statements against the medical records. An ALJ is not required to adopt a claimant's subjective complaints without question. *Rock v. Colvin*, 628 Fed. Appx. 1, 3 (2d Cir. 2015) (quoting *Genier v. Astrue*, 606 F. 3d, 46, 49 (2d Cir. 2010)). In *Rock,* Plaintiff brought a similar action claiming that an ALJ improperly cited inconsistencies from Rock as a rationale to issue an adverse ruling. *Rock*, 628 Fed. Appx. at 3. The Second Circuit found that the ALJ did not err by considering the inconsistencies that he had detected, because the mere existence of the alleged diagnosis did not explain why Plaintiff had repeatedly not sought treatment nor explained his myriad of reported symptoms. *Id.*

Here, Plaintiff testified that he was unable to lift, or move objects, in addition to being unable to stand for more than two minutes at a time. R. at 32. Yet, the medical records submitted by Plaintiff disputed these assertions. Plaintiff's self-submitted disability report stated that while he suffered from a variety of ailments, he did not suffer from pain, or any other symptoms related to any of his conditions. R. at 188. Additionally, Plaintiff's medical records consistently presented a different scenario than what Plaintiff presented. The Montefiore medical records stated that Plaintiff had a full musculoskeletal range of motion. R. at 285. Records from Dr. Goldstein concede Plaintiff was suffering from various mental health disorders, yet Dr. Goldstein

found that the disorders were not significant enough to prohibit Plaintiff from daily functioning. R. at 238. Dr. Xie's examination also showed that while pain was present, it was intermittent. R. at 241. Xie also found that Plaintiff possessed a normal gait and a full range of motion. *Id.* Considering that the ALJ cited to all of these medical reports in the decision, Plaintiff's assertion that the ALJ failed to specify the inconsistencies between Plaintiff's testimony and the record is without merit.

Therefore, the ALJ adequately properly balanced the subjective statements provided by Plaintiff during testimony and the medical opinions seen throughout the record.

## CONCLUSION

Upon a thorough consideration of the evidence, the Court finds the Commissioner's final decision is supported by a substantial evidence and based upon application of correct legal standards.

For the reasons stated above, the Commissioner's motion for judgment on the pleadings is **GRANTED**, and Plaintiff's motion for judgment on the pleadings is **DENIED**, and the ALJ's decision is **AFFIRMED**. The Clerk of the Court is respectfully directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated: August 13, 2024**
**New York, New York**

**HON. ANDREW L. CARTER, JR.**
**United States District Judge**

16